IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

GINGETTA L. MOBLEY,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

    Defendant.

No. C12-0059

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   *Mobley's Education and Employment Background* . . . . . . . . . . . . 5
    B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
        1.   *Mobley's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 7
    C.   *Mobley's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 14
    B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 17

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

      1.    *Medical Evidence, RFC Assessment, and Record Development* ................................. 17

      2.    *Credibility Determination* ........................ 22

VI.  *CONCLUSION* ........................................ 25

VII.  *ORDER* ........................................... 25

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Gingetta L. Mobley on June 26, 2012, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Mobley asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Mobley requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On November 21, 2008, Mobley applied for disability insurance benefits.[2] In her application, Mobley alleged an inability to work since September 13, 2008 due to severe arthritis, Grave's disease, diabetes, depression, and back problems. Mobley's application was denied on June 26, 2009. On October 26, 2009, her application was denied on reconsideration. On December 18, 2009, Mobley requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 13, 2011, Mobley appeared via video conference with her attorney before ALJ Julie K. Bruntz for an administrative

---

[2] On the same date, Mobley also applied for Supplemental Security Income ("SSI") benefits. However, on November 28, 2008, the Social Security Administration notified Mobley that she was not eligible to receive SSI benefits due to her income. *See* Administrative Record at 62-69.

hearing. Mobley and vocational expert Marian S. Jacobs testified at the hearing. In a decision dated February 18, 2011, the ALJ denied Mobley's claims. The ALJ determined that Mobley was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Mobley appealed the ALJ's decision. On April 30, 2012, the Appeals Council denied Mobley's request for review. Consequently, the ALJ's February 18, 2011 decision was adopted as the Commissioner's final decision.

On June 26, 2012, Mobley filed this action for judicial review. The Commissioner filed an Answer on September 28, 2012. On November 1, 2012, Mobley filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. On December 31, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 10, 2013, Mobley filed a reply brief. On July 13, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.

3

2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id*. (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id*. Therefore, "even

if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Mobley's Education and Employment Background

Mobley was born in 1962. She is a high school graduate. Mobley testified that after high school, she had some schooling in cosmetology and some training for a job with an airline. The record contains a detailed earnings report for Mobley. The report covers the time period of 1986 to 2008. She had minimal earnings (less than $2,000) from 1986 to 1993. From 1994 to 2008, Mobley earned between $8,158.26 (2005) and $23,691.79 (2007). She has no earnings since 2009.

### B. Administrative Hearing Testimony

#### 1. Mobley's Testimony

At the administrative hearing, Mobley testified that she could no longer work because of neck and back problems. Mobley described pain descending from the bottom of her back down her left leg to her foot. She testified that "I can't walk for so long or

stand or sit. I'm, actually, off and on laying down or sitting down."[3] Mobley also stated the her pain is sometimes severe enough to rate a 10 on a scale of 1 to 10, with 10 being the highest level of pain.

Mobley's attorney inquired about her functional abilities:

> Q: Does the pain affect your ability to do the things that we were just talking about before, bending, stooping, twisting, kneeling?
>
> A: Yes. I'm at the point where my husband had to put a barstool in the kitchen for me to do dishes, because I can't bend down to put them in the dishwasher. Then I can only sit there for so long doing the dishes. I cannot run the sweeper, because [it] hurts, because I can feel it pulling in my back.
>
> Q: Right.
>
> A: And going up and down steps, I go down the steps, I have to go slow; but coming back up, well, I can feel it, and I just -- I can't do it.

(Administrative Record at 43.) Mobley also testified that she uses a cane at all times to help her walk. She indicated that she could stand for about 15 to 20 minutes before needing to sit down.

Lastly, Mobley's attorney questioned Mobley about her daily activities:

> Q: And during, say, during the day . . . how do you spend your time during the day? What do you do? You talked about shifting positions, I understand that. What else are you able to accomplish? Are you in bed a lot? Are you --
>
> A: I'm mostly in bed or we got a reclining chair that my husband put in a room for me. . . .
>
> Q: So, the more frequent position during the day --
>
> A: Is laying down.

---

[3] Administrative Record at 41.

| Q: | Is lying down. How about at night, are you able to sleep at night? |
| A: | I ain't been sleeping through the night since I had the surgery. |
| Q: | The last couple years? |
| A: | Yes. . . . |
| Q: | Okay. And, so, how much continuous sleep can you get? What's the longest time? |
| A: | If I take more of the medicine than I'm supposed to, I'll sleep through the night. . . . |
| Q: | So, you're really kind of knocking yourself out if you do that. |
| A: | Yeah. |

(Administrative Record at 48-49.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Marian S. Jacobs with a hypothetical for an individual who:

> could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds. This individual could stand or walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday. Her ability to push and pull, including operation of hand or foot controls would be unlimited other than as shown in these limits.
>
> She could occasionally climb ramps and stairs, never climb ladders, ropes or scaffolding. She could occasionally balance, stoop, kneel, crouch and crawl. This individual would be able to do only simple, routine, repetitive work.

(Administrative Record at 54.) The vocational expert testified that under such limitations, Mobley could perform her past work as a cashier. The vocational expert further testified that Mobley could also perform the following sedentary and/or light, unskilled jobs: (1) laundry folder (450 positions in Iowa and 39,000 positions in the nation), (2) labeler (4,000 positions in Iowa and 216,000 positions in the nation), (3) assembler of buttons

(500 positions in Iowa and 27,000 positions in the nation), and (4) addresser or sorter of envelopes and packages (240 positions in Iowa and 24,000 positions in the nation). The ALJ asked the vocational expert a second hypothetical which was identical to the first hypothetical except that the individual would need to alternate sitting and standing at will and would miss three or more days of work per month. The vocational expert testified that under such limitations, Mobley would be precluded from competitive employment. Additionally, Mobley's attorney questioned the vocational expert:

> If the person has such a degree of pain that they can't concentrate very well, so they need to take both an extra break during the day and at just unspecified times, and also during that time would have to work at a slow pace up to a third of the workday, would all jobs be eliminated?

(Administrative Record at 57.) Again, the vocational expert testified that under such limitations, Mobley would be precluded from competitive employment.

### C. Mobley's Medical History

On September 17, 2008, Mobley injured herself lifting luggage at work. On September 22, 2008, she met with Dr. Beth G. Johnson, M.D., complaining of low back pain. Dr. Johnson noted that "[s]he can fully extend. She cannot fully flex. She cannot ambulate with comfort. She cannot sit with comfort. She cannot function in [her] current job."[4] Dr. Johnson also noted that Mobley's "pain is worsened by bending, lifting, changing positions. The pain is relieved by rest, standing straight, heat, [and] medications."[5] Dr. Johnson diagnosed Mobley with a lower back sprain. Dr. Johnson recommended medication, heat, and stretching exercises as treatment. One week later, on September 29, Mobley had a follow-up appointment with Dr. Johnson. She continued to

---

[4] Administrative Record at 292.

[5] *Id.*

8

complain of severe pain on her left side. Upon examination, Dr. Johnson noted that Mobley "is in a fair bit of pain and in fact became tearful during the examination. . . . There is significant spasm and tenderness to palpation in the left paraspinous musculature."[6] Dr. Johnson diagnosed Mobley with low back pain, and recommended medication and heat as treatment. Dr. Johnson also ordered X-rays of Mobley's back. The X-rays showed severe degenerative disc disease and severe bilateral facet arthropathy at the L5-S1 vertebrae.

Mobley returned to Dr. Johnson on October 9, 2008. She continued to suffer from low back pain which radiated down her left leg to her toes. Upon examination, Dr. Johnson noted that "there is muscle spasm evident bilaterally as well as tenderness to palpation bilaterally in the lumbosacral region. [Mobley's] gait is with a significant limp, and [she] essentially bears no weight when standing on her left leg."[7] Dr. Johnson diagnosed Mobley with unrelenting low back pain with symptoms of radiculopathy on the left side. Dr. Johnson recommended medication as treatment, and ordered an MRI of Mobley's back. The MRI showed a central disc protrusion at L5-S1 with associated bulging of the annulus into the left neural foramen with partial obscuration of the perineural fat of the exiting left nerve root. The MRI also showed diffuse facet arthropathy.

On December 1, 2008, Mobley had another follow-up appointment with Dr. Johnson. She complained of depression associated with her low back pain. Dr. Johnson noted that Mobley's insurance company refused to pay for surgery until she suffered pain for a longer period of time. Dr. Johnson indicated that "[Mobley] has exhausted her non-pharmacologic routes for pain medication. The epidural injections,

---

[6] Administrative Record at 290.

[7] *Id.* at 286.

physical therapy, as well as the TENS unit have not been helpful and she continues to have serve [*sic*] pain and is out of work because of this."[8] Dr. Johnson further noted that Mobley's "pain medication is somewhat limited by the fact that she watches young grandchildren."[9] Dr. Johnson diagnosed Mobley with lower back pain radiating to the left toes and depression. Dr. Johnson recommended medication as treatment.

On January 8, 2009, Mobley was referred by Disability Determination Services ("DDS") to Dr. Michael C. March, Ph.D., for a mental status evaluation. Upon examination, Dr. March diagnosed Mobley with major depressive disorder, single episode, severe intensity, generalized anxiety disorder, chronic back and neck pain, Graves disease, diabetes, and arthritis. With regard to her functional abilities, Dr. March opined that:

> [Mobley] would exhibit at least moderate problems with remembering and understanding instructions, procedures, and locations of a complicated nature. She may demonstrate moderate impairment with managing []fairly simple procedures given her lethargy, dysphoria, and cognitive inefficiency.
>
> I would anticipate inefficiencies in terms of maintaining concentration and attention. Her ability to manage consistent pace of activity would likely be limited by her physical difficulties through her affective distress and cognitive inefficiency will be problematic as well. I would anticipate that she would be able to interact appropriately with supervisors, coworkers, and the public though would likely construe herself in a very inadequate manner and has [sic] some problems with irritablity at times. Her judgment is fair. She may have mild-to-moderate problems with coping to change in the work place.

(Administrative Record at 316.)

---

[8] Administrative Record at 282.

[9] *Id.*

On January 28, 2009, Dr. Beverly Westra, Ph.D., reviewed Mobley's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Mobley. On the Psychiatric Review Technique assessment, Dr. Westra diagnosed Mobley with major depressive disorder and generalized anxiety disorder. Dr. Westra determined that Mobley had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Westra determined that Mobley was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Dr. Westra concluded that:

> [Activities of daily living] reflect back pain primarily. She is able to cook, clean, drive, shop and use a checkbook. She reported no problems getting along with others or following instructions. . . .

> [Mobley] is capable of a range of simple, routine tasks with some interruption in sustained attention due to pain. Detailed tasks will be done inconsistently. Social skills are adequate but she may require additional support in adapting to change. Allegation of depression is supported but would not entirely preclude work activity.

(Administrative Record at 336.)

On March 5, 2009, Mobley met with Dr. Kevin R. Eck, M.D., complaining of low back pain and pain in her left lower extremity. Upon examination, Dr. Eck found that

Mobley "had no obvious motor deficits."[10] Dr. Eck ordered an MRI for Mobley. The MRI revealed "evidence of disk desiccation, decreased disk height and reactive endplate changes at the L5-S1 level with a central disk bulge and narrowing of the neural foramen bilaterally, left greater than right."[11] Dr. Eck recommended surgery as treatment. On April 17, 2009, Mobley underwent a L5-S1 diskectomy and spinal fusion with placement of left threaded cages and anterior plate placement. At a follow-up appointment, on April 28, 2009, Mobley reported that her back pain had improved following surgery. She noted "increasing lower extremity discomfort," but denied "weakness or numbness in the lower extremities."[12] Dr. Eck opined that her lower extremity discomfort would resolve over time.

On June 25, 2009, Dr. C. David Smith, M.D., reviewed Mobley's medical records and provided DDS with a physical RFC assessment for Mobley. Dr. Smith determined that Mobley could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Smith also determined that Mobley could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Smith found no manipulative, visual, communicative, or environmental limitations. Dr. Smith concluded that the medical evidence in record:

> is sufficient to assess the allegations of [Mobley]. [Her] allegations are credible but the degree of impairment alleged is not anticipated in persisting for one year from onset.

---

[10] Administrative Record at 353.

[11] Administrative Record at 372.

[12] *Id.* at 391.

(Administrative Record at 407.)

On June 30, 2009, Mobley returned to Dr. Eck for a follow-up appointment. Mobley reported to Dr. Eck that her "lower extremity symptoms have resolved. She has noted increased back discomfort the last couple of days, but said she was more active a couple days ago and thinks it might be related to this. Prior to this recent worsening of her back pain she said her back symptoms were better than before surgery."[13] Upon examination, Dr. Eck concluded that "[o]verall, I think [Mobley] is doing reasonably well."[14] Dr. Eck recommended physical therapy as continued treatment.

On October 16, 2009, Dr. Dennis Weis, M.D., reviewed Mobley's medical records and provided DDS with a physical RFC assessment for Mobley. Dr. Weis determined that Mobley could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Weis also determined that Mobley could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Weis found no manipulative, visual, communicative, or environmental limitations.

On April 22, 2010, Mobley had another follow-up appointment with Dr. Eck regarding her April 2009 back surgery. Dr. Eck noted that Mobley:

> remains frustrated with her ongoing mechanical back discomfort and continues to have some discomfort at the site of her abdominal scar as well. Overall, she is still happy she went ahead with the surgery. She has less discomfort now following the surgery than before.

---

[13] Administrative Record at 426.

[14] *Id.*

(Administrative Record at 447.) Dr. Eck further noted that Mobley had explored multiple options for managing her continued back discomfort, including pain management interventions, physical therapy, and medications. Dr. Eck opined that "I think at this point there is not much more we can do apart from encouraging her to continue with core strengthening, low-impact exercise[,] judicious use of medications and maintaining good body mechanics."[15]

Mobley met with Dr. Eck again in October 2010. She reported that her back pain "is better in comparison to her pre-fusion status and is manageable."[16] Dr. Eck obtained an MRI of Mobley's back. The MRI showed postoperative changes at L5-S1, including mild spondylosis. However, Dr. Eck stated that additional surgery was not necessary. Dr. Eck recommended continued physical therapy and pain management as treatment.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Mobley is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

---

[15] Administrative Record at 447.

[16] *Id.* at 466.

> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at

590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process);

*Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.

§ 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of

disability, the process ends and the claimant is determined to be not disabled." *Pelkey v.*

*Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting

*Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant

"bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,

524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC

[(residual functional capacity)], age, education, and work experience, there [are] a

significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Mobley had not engaged in substantial gainful activity since September 13, 2008. At the second step, the ALJ concluded from the medical evidence that Mobley had the following severe impairments: status post laminectomy, diabetes mellitus, Grave's disease, and depressive disorder. At the third step, the ALJ found that Mobley did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Mobley's RFC as follows:

> [Mobley] has the residual functional capacity to perform sedentary work . . . in that [she] is capable of carrying/lifting twenty pounds occasionally and ten pounds frequently, can sit for six hours of an eight hour day, and can stand/walk for 15-20 minutes at a time for a total of two hours of an eight hour day. Pushing, pulling and the operation of hand and foot controls are limited within weight limits described above. [Mobley] can occasionally balance, stoop, crouch, kneel, and crawl. She can perform simple, routine, and repetitive work.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Mobley was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Mobley

could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Mobley was not disabled.

### B. Objections Raised By Claimant

Mobley argues that the ALJ erred in three respects. First, Mobley argues that the ALJ failed to properly evaluate all of the medical evidence regarding the nature and severity of her condition. Second, Mobley argues that the ALJ failed to fully and fairly develop the record with regard to her functional limitations. Lastly, Mobley argues that the ALJ failed to properly evaluate her subjective allegations of disability.

### 1. Medical Evidence, RFC Assessment, and Record Development

Mobley argues that in determining that she was not disabled, the ALJ failed to properly evaluate the medical evidence and medical opinions in the record. Specifically, Mobley argues that the ALJ failed to address or explain her conclusions regarding the medical evidence in the record. Mobley also argues that if the ALJ did not find the medical evidence or opinions sufficient for determining whether she was disabled, then the ALJ should have ordered a consultative examination. As a result of the ALJ's failure to fully and fairly develop the record as to the medical evidence, Mobley maintains that the ALJ's RFC is flawed and not supported by substantial evidence. Mobley concludes that this matter should be remanded for further consideration of the record as a whole, in particular with regard to her medical records.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same).

17

Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Lastly, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be

18

purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

In her decision, the ALJ thoroughly addressed and discussed Mobley's medical history.[17] The ALJ further addressed the medical evidence in the record as follows:

> [Mobley] has not generally received the amount and type of medical treatment one would expect for a totally disabled individual, considering the relatively infrequent trips to the doctor for the allegedly disabling symptoms. There are significant gaps in [Mobley's] history of treatment. . . .
>
> Given [Mobley's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of significantly limiting restrictions placed on [Mobley] by the treating doctor. Yet a review of the record in this case reveals the current restrictions recommended by the treating doctor, orthopedic surgeon Dr. Eck, are lifting/pushing/pulling no more than 30 pounds and no repetitive bending or twisting. The undersigned notes that earlier in the healing process, Dr. Eck completed forms, apparently for insurance purposes, indicating that [Mobley] was not able to work. These restrictions . . . are consistent with the residual functional capacity described above and Dr. Eck's contemporaneous treatment notes. Little weight has been accorded to Dr. Eck's various opinions in completed forms because the opinions have not been consistent with his contemporaneous treatment notes.
>
> The residual functional capacity conclusions reached by the physicians employed by the Iowa Disability Determination Services also supported a finding of 'not disabled.' Although

---

[17] *See* Administrative Record at 20-21 (providing a detailed and thorough review of Mobley's medical history).

those physicians were non-examining, their opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions, as explained throughout this decision. The IDDS physician's physical residual functional capacity assessment concluded that [Mobley] was capable of a light-duty range of work. The mental restrictions assessed by IDDS advisors concluded that [Mobley's] depression would cause functional limitation in concentration, persistence, and pace. [Mobley] has since submitted additional evidence of treatment for her physical conditions. Whereas the undersigned concludes [Mobley's] physical residual functional capacity is currently more limited than determined by the IDDS advisors to a sedentary level with predominant sitting, the conclusions reached are somewhat supported by the medical evidence of record at the time of their assessment and the claimant's credibility when accorded proper weight. The undersigned has thus incorporated the restrictions into the residual functional capacity noted above, to the extent consistent with other factors in the record.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Mobley's] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Mobley's] capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 23-24.)

Having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to Mobley's medical records. *See Cox*, 495 F.3d at 618. The Court also finds that the ALJ properly considered and weighed both the opinion evidence provided by Mobley's treating sources and the medical evidence as a whole. Specifically, the ALJ explained her findings with regard to the medical evidence, and

provided "good reasons" both explicitly and implicitly for the weight given to the medical evidence and the opinions of various doctors. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Moreover, the record reflects that not only did the ALJ properly consider Mobley's medical records, but the ALJ also properly considered the observations of treating and non-treating physicians and Mobley's own description of her limitations in making the RFC assessment for Mobley.[18] *See Lacroix*, 465 F.3d at 887. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See id.* The Court also finds that the medical evidence relied on by the ALJ was adequate for making a disability determination.[19] No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques. Accordingly, the Court determines that remand is unnecessary for a consultative examination. *See Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Even if

---

[18] *See* Administrative Record at 19-24 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

[19] Mobley focuses on a "Return to Work" form that was provided to her primary treating physician, Dr. Eck, in which Dr. Eck stated that a "FCE" was necessary to establish work restrictions, as support for her contention that it was error for the ALJ not to order a consultative examination. *See* Administrative Record at 432. Assuming "FCE" stands for functional capacities evaluation, the Court is unpersuaded that this evidence mandates remand for a consultative examination. Specifically, the Court finds that the ALJ properly weighed Dr. Eck's opinions and specifically gave less weight to his opinions on insurance and work forms as being inconsistent with his contemporaneous treatment notes. *See* Administrative Record at 23. It is also curious that Dr. Eck, as Mobley's primary treating physician, was unable to provide an opinion on Mobley's work capabilities. Thus, the Court concludes that the ALJ did not err in determining that a consultative examination for Mobley was not needed in this matter.

inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## 2. Credibility Determination

Mobley argues that the ALJ failed to properly evaluate her subjective allegations of disability. Mobley maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Mobley's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies

in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In addressing Mobley's credibility, the ALJ made the following observations:

> After careful consideration of the evidence, the undersigned finds that [Mobley's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mobley's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity. . . .
>
> At one point or another in the record (either in forms completed in connection with the application and appeal, in

medical reports or records, or in [Mobley's] testimony), [Mobley] has reported a myriad of daily activities consistent with the residual functional capacity detailed above. The level and severity of medical findings, however, do not correlate to a level of complete disabling impairment. She is able to attend to personal care, household chores, shopping, and getting around by herself, although these tasks may take longer. [Mobley] uses pain medication, which she alleges causes side effects of drowsiness, and has tried physical therapy with some success. Treating sources have observed that her findings on objective examination and testing are relatively normal given her pain responses. [Mobley] acknowledged her back pain is better than before her surgery, but she still has difficulty climbing stairs and standing for longer than 15-20 minutes at a time. [Mobley] presented to the hearing using an assistive device for walking and asserted this was recommended by her treating pain specialist, although there is not support in the medical evidence presently on record. Sitting helps relieve her pain, as does medication. She reported no difficulty getting along with others or following instructions, but pain would be expected to cause some interruption with sustain[ing] attention and completing detailed tasks.

(Administrative Record at 22-23.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Mobley's treatment history, medical history, functional restrictions, medication use, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Mobley's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown*

24

*v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Mobley's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record in this matter. Specifically, the ALJ properly addressed, considered, and weighed the medical evidence and opinions in the record, including the opinions of the various medical sources. Furthermore, the ALJ properly considered Mobley's medical records, observations of treating and non-treating physicians, and Mobley's own description of her limitations in making her RFC assessment for Mobley. Lastly, the Court finds that the ALJ properly determined Mobley's credibility with regard to her subjective complaints of disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 19th day of April, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA